454

## Met-Pro, Inc., v. Judson Bros. Co. et al.

*John E. Flynn* and *Harry Shapiro*, for plaintiff.

*Raymond Pearlstine*, for William H. Heermance, defendant.

*Hauser and Mingey*, for Judson Bros. Company, defendant.

DANNEHOWER, J., February 28, 1950.—This bill in equity was brought against an employe, Heermance, and a competitive manufacturing company, Judson Bros. Company, seeking an injunction, on the basis of breach of contract and breach of confidence, to restrain the manufacture and sale of a side delivery rake by the manufacturing company and prevent Heermance from further disclosure of the design and construction of a certain side delivery rake to any person, that he be compelled to sign patent applications according to his written contract, and also for an accounting from sales and damages for losses.

Upon the close of plaintiff's evidence, both defendants filed motions to dismiss the bill. Briefs and supplemental briefs have been filed and oral argument heard.

In considering such a motion (which has the same effect as a nonsuit at law) all the evidence must be considered most favorably to plaintiff.

The foundation of this proceeding is a written contract dated March 1, 1948, between plaintiff, Met-Pro, Inc., manufacturer, and William H. Heermance, designer, one of the defendants, which provides inter alia as follows:

"Whereas Manufacturer is engaged in the manufacture of metal products, among other things, and is desirous of obtaining an original design of a side rake suitable for farm tractor operation; and

"Whereas Designer has represented that he is able to design and develop such a side rake which will be practical for said purpose and has proposed to design and develop such a side rake for Manufacturer and serve as consultant in connection with the development of said design and the manufacture of the said product.

"(1) DESIGNER agrees to originate and furnish MANUFACTURER with complete and detailed drawings and blue print of an original design of a side rake suitable for farm tractor operation within a reasonable time from the date hereof.

"(2) DESIGNER further agrees that the side rake when completed and all drawings, and blue prints shall be the sole and exclusive property of MANUFACTURER and that Designer will, upon request of Manufacturer, execute any and all papers necessary and proper to assure Manufacturer of the exclusive rights to the manufacture of such side rakes in conformity with said design; and at the request of Manufacturer, if it deems necessary, said Designer will make proper

application for patent of said side rake at the expense of Manufacturer, and upon obtaining same will promptly execute any and all papers necessary to properly assign the same to Manufacturer.

"(3) Designer further agrees that following delivery and acceptance of said design by Manufacturer he will act as consultant and furnish all necessary information and assistance to develop and perfect the same to the end of making the manufacture of such side rake practical in the plant and with the equipment of the Manufacturer; and in addition, if it is ascertained that said design or any part thereof infringes upon any patents, Designer will furnish Manufacturer with either a new design or changes in the original design so that the same will not infringe on previously patented equipment.

"(4) (a) As part of the consideration for said agreements of Designer, the Manufacturer agrees to pay to Designer the sum of Six hundred fifty ($650.00) Dollars in the following manner:

"Two Hundred Dollars at or before the ensealing and delivery of this agreement; the further sum of Two hundred and twenty-five Dollars thirty days from the date hereof, and the balance of Two hundred and twenty-five Dollars upon delivery to Manufacturer of the completed design.

"(b) As additional consideration therefor the Manufacturer agrees to pay to Designer one-half of one percent of the Manufacturer's gross selling price of all side rakes manufactured by it in accordance with said design; and in the event the said design is subsequently patented by Manufacturer or patented by Designer and the patent subsequently assigned to Manufacturer in accordance with paragraph two (2) of this agreement, and licensing agreements are made by Manufacturer to other persons, firms or corporations, then Manufacturer also agrees to pay or cause

to be paid to Designer one-half of one percent of the selling price of all side rakes manufactured by such licensees pursuant to such licensing agreements. Such additional consideration shall be accounted and paid for by Manufacturer to Designer at quarterly intervals on sales of such side rakes during each of said intervals."

The evidence discloses that after the above contract was executed on March 1, 1948, Met-Pro, Inc., plaintiff, demonstrated a pilot model side delivery rake at New Holland, Pa., on May 25, 1948. This rake was constructed in accordance with the plans and designs prepared by Heermance. The power for rotating the reel was supplied by a power take-off unit from the tractor by means of a flexible drive shaft. This pilot model was not entirely satisfactory.

In June 1948 Heermance designed a new transmission to provide constant speed of the reel and a method whereby the reel could be operated in reverse in order to ted, as it was essential that most any side rakes must also be able to operate as a tedder. By the middle of June 1948 plaintiff had paid Heermance the balance of the $650, namely, $225, which according to the contract was due "upon delivery to the manufacturer of the completed design". These changes in design and power were not satisfactory, whereupon Heermance suggested the idea of discarding the power take-off and using the power from the rear wheel of the rake by a traction drive to revolve the reel. Whereupon Heermance made drawings of a rear wheel traction drive, certain parts were made by plaintiff, a flexible drive shaft was purchased from Judson Bros. Company on July 14th, universal joints were bought, and with the aid of a gear-box from an old washing-machine, a working model, or mock-up was made and satisfactorily tested at Heermance's farm.

Plaintiff then requested Heermance to improve and change the design and construction of the side rake as a side rake and tedder. This Heermance refused to do, claiming he had fully performed his contract, that a redesign of the machine was not included in his contract, and he insisted on additional compensation. Plaintiff contended it was his obligation under the contract to design and develop and perfect a side rake which was practical and saleable. However, Heermance continued to work on the machine from July 15th to July 20th especially on the rear wheel traction drive.

Shortly after July 1, 1948, Judson Bros. Company, who had never manufactured a side delivery rake, and having made a survey of the demand for side rakes for plaintiff, and knowing of Heermance's employment with plaintiff, contacted Heermance and employed him in engineering and drafting work in their plant. When he was requested by Judson Bros. to design a side delivery rake and tedder for them, Heermance informed them of his contract with plaintiff and also that plaintiffs had refused to give him steady employment or pay him for a design of a side rake and tedder.

To avoid any future misunderstanding, a conference was held on July 27, 1948, where all parties were present. At this conference, plaintiff did not object to the fact that Heermance would be steadily employed by Judson Bros., but when the designing of a side rake was mentioned, plaintiff told Judson Bros. to read Heermance's contract with them and if they decided to manufacture a side rake, not to copy one designed by Heermance for Met-Pro, Inc., and not to use the rear wheel drive, flexible drive shaft, cam action method of reversing cam action, or general design. It was stated that so long as Judson Bros. did not build a side rake similar to the one designed by Heermance for Metro-Pro, Inc., there would be no objection.

On August 9, 1948, Heermance entered into a written contract with Judson Bros. for the designing and construction of a side rake and tedder. On October 19, 1948, the Judson Bros. side rake and tedder was completed and tested. This rake and tedder had two wheels, obtained its power for the reel from the rear wheel of the rake by the use of a chain and sprocket. An eccentric is used to rotate the reel.

During August, September, and October 1948 plaintiffs worked on the side rake and tedder to reverse the cam action and did not call upon Heermance to render any services under his contract or in an advisory capacity. However, in October 1948, at plaintiff's request Heermance appeared and advised them to discard the cam action and drew plans for use of an eccentric, which was made and installed together with the rear wheel drive, but without a chain and sprocket.

In January 1949 the side rake and tedder manufactured by plaintiff and that manufactured by Judson Bros. were displayed at farm show and both machines, to the eye of a layman, are practically similar in general design, appearance, and method of operation. The photographs of each are in evidence and they can hardly be distinguished.

As to defendant Heermance, plaintiff contends that the evidence shows that he committed a breach of contract and breach of confidence and as to him the bill should not be dismissed.

The written contract obligated Heermance to produce an original design of a side rake suitable for *farm tractor operation*; that all drawings and blueprints shall be the *sole and exclusive* property of the manufacturer; that the designer will execute all papers for exclusive rights and patents, and that he will act as consultant and furnish all necessary information and assistance to *develop and perfect* the same.

Heermance contends that he completely performed his contract when he did design a side rake suitable for farm tractor operation which was displayed at New Holland; that he received the full sum of $650 "upon delivery to the manufacturer of the completed design"; that he refused to redesign the side rake as a side rake and tedder as it was not included in the contract, and he desired additional compensation, which was refused; that he voluntarily prepared drawings and designs for the rear wheel or traction drive for plaintiffs; that he refused to sign patent applications, because it was not the machine he designed or invented; that he entered into a contract with Judson Bros. with plaintiff's knowledge and consent; that he did not disclose any trade secrets to Judson Bros.; that plaintiff had no exclusive right to his services; that the work he did for plaintiff was not novel or patentable and that a side rake for farm tractor operation can only mean a side rake which receives its power from the tractor.

With all of these contentions, the chancellor cannot agree. When Heermance designed and tested the side rake displayed at New Holland on May 25, 1948, he had not completed his contract. The evidence shows that this rake was not suitable for farm tractor operation. It was not perfected or developed and certain corrections had to be made. Heermance cannot contend that for the next six weeks all the work which he did for plaintiff was purely voluntary and not under the contract. Heermance himself realized corrections had to be made and when the power take-off proved impractical, he designed the rear wheel traction drive and gave the drawings thereof to plaintiff, before he entered into a contract with Judson Bros. His contract with plaintiff called upon him to develop and perfect the side rake, which had not been fulfilled. Therefore,

when he contracted with Judson Bros. to design and build a side delivery rake and tedder for them, he was still under contract with plaintiff and his contract had not been performed. He was under contract with two competitive manufacturers to design and invent the same machine. Such contracts for inventing and designing develop trade secrets and demand the highest confidence and trust between employe and employer. In thus giving to Judson Bros. his experience, knowledge and skill, they were able to produce and market a similar side rake and tedder, in a very short time, two months and ten days, and at less experimental expense. It is a reasonable inference from the evidence, heard so far, that Heermance used many of the same ideas and designs which he had already made and sold to plaintiffs, and until his defense is heard, the chancellor is of the opinion that Heermance committed a breach of his contract with plaintiff.

"Where an employee by contract is hired to make a particular invention or solve a specific problem for the employer the property in the inventions of the employee belongs to the employer—the employee has sold in advance the fruit of his talent, skill and knowledge, to his employer, who is equitably entitled to it; in making such inventions or solving such problems the employee is merely doing what he was hired to do: Solomons vs. U. S. 137, U. S. 342; Gill v. U. S., 160 U. S. 426": Quaker State Oil Refining Co. v. Talbot, 315 Pa. 517.

Heermance designed the rear wheel traction drive for plaintiff the latter part of June or very early in July 1948 and later sent a bill of $175 for these services. The very nature of Heermance's employment was confidential, especially until plaintiff's machine was on the market, and it would seem he breached the confidence and trust included in such a contract. See

A. L. I. Restatement of the Law of Torts, 757(c) and 758. Furthermore, he had contracted to sign the patent applications. Surely, plaintiff has a clear right to obtain his signature to an application for a patent on what he invented and designed for plaintiff.

The chancellor is, therefore, of the opinion that plaintiff has produced sufficient evidence of a breach of contract, breach of confidence, and refusal to sign patent application, to overrule the motion to dismiss the bill, and that defendant, Heermance, should be called upon to defend his actions, if he sees fit.

As to defendant, Judson Bros. Company, the chancellor is likewise of the opinion that sufficient evidence has been submitted to require it to defend. On August 9, 1948, when Judson Bros. entered into a contract with Heermance to design a side delivery rake and tedder, they well knew or should have known of his contract with plaintiff. At the conference on July 27, 1948, they were told to read the contract and not to manufacture a side rake similar to plaintiff's. If they read the contract, they would have seen Heermance had obligated himself to give assistance to develop and perfect plaintiff's side rake, to execute patent applications, and all drawings were the sole and exclusive property of plaintiff's. They knowingly took the benefit of Heermance's prior experience and knowledge, sought out his services and took the chance or peril of being called to account for an improper and unwarranted interference with the contractual relations between Heermance and plaintiff. In just a little over two months defendants designed, manufactured and tested a side delivery rake and tedder, the photograph of which is very similar in general design, operation and appearance to one produced by plaintiff. It would appear from the evidence heard so far, that Judson Bros. knowingly received the benefit of Heermance's

wrongful conduct and should justify their position, which is to the effect that they were justified in employing Heermance, that plaintiff consented to Heermance's employment with Judson Bros., or that plaintiff must have copied the Judson side rake and tedder after October 10, 1948, when it first appeared.

And now, February 28, 1950, for the foregoing reasons, the motions on behalf of both defendants to dismiss the bill are hereby overruled and refused, and exceptions are granted.